UNIVERSITY OF DELAWARE, a corporation of the State of Delaware, Defendant Below, Appellant,

v.

Samuel W. MUNSON, Individually and as Administrator of the Estate of Jeffrey B. Munson, Plaintiff Below, Appellee.

Supreme Court of Delaware.

Feb. 6, 1974.

Roger P. Sanders, of Prickett, Ward, Burt & Sanders, Wilmington, for defendant below, appellant.

L. Vincent Ramunno, Wilmington, for plaintiff below, appellee.

CAREY and DUFFY, JJ., and BROWN, Vice-Chancellor, sitting.

CAREY, Justice:

This is a wrongful death action brought by the decedent's father, Samuel W. Munson, against the University of Delaware. The claim against the University includes a survival action to recover medical ex-

penses, but that portion of the case is not pertinent to this appeal.

The decedent, Jeffrey Munson, was an 18-year-old first-year student at the University of Delaware. He resided on the third floor of Sharp Hall, a University dormitory. He died as the result of a fall from the third-floor level down the stairwell of Sharp Hall. The complaint charged negligence by failing to provide proper safeguards against such a fall. The Superior Court jury returned a verdict for the plaintiff in the amount of $52,860.00.

I

■■■ The first of appellant's arguments is that the lower Court's refusal to instruct the jury on unavoidable accident was reversible error. Appellant relies upon Rich v. Dean, Del.Supr., 261 A.2d 522 (1969), in which this Court discussed the charge of unavoidable accident at some length. We stated in *Rich* that the instruction should be given only when the factual situation justifies a conclusion that the accident was unavoidable, and we emphasized that, in order to avoid possible confusion, the jury should not be given the charge on unavoidable accident unless that instruction is clearly warranted. The facts of this case do not warrant an inference of an unavoidable accident, and the lower Court properly refused to give the instruction.

II

■■■ Appellant argues that it was error to permit appellee's expert witness, a professional engineer named Usiskin, to offer his opinion of the deficiencies in the stairway from which the decedent fell. This witness's opinion was based in part upon the requirements of the BOCA Code,[1] but appellant is wrong when it contends that Mr. Usiskin's opinion was based *solely* upon that source.[2]

Appellant's objection to Mr. Usiskin's testimony is twofold. First, appellant argues that the plaintiff failed to prove that Sharp Hall was constructed after January 5, 1952, the effective date of the BOCA Code.[3] Appellant also argues that even if the chronology of the construction of Sharp Hall would bring it within the purview of the BOCA Code, in 1951–1952 the University was not subject to the building code enacted by the Newark City Council, citing 14 Del.C. § 5106 and Parker v. University of Delaware, 31 Del.Ch. 381, 75 A.2d 225 (1950). Irrespective of the validity of these arguments, we hold that it was not error to permit plaintiff's expert to express his opinion, although that opinion was based in part upon the BOCA Code. Hercules Powder Company v. DiSabatino, Del.Supr., 188 A.2d 529 (1963). The code itself was not offered into evidence and, indeed, the issue was not whether the code had been violated, but merely the propriety of allowing a witness

1. A uniform building code adopted by many municipalities throughout the country.

2. The following testimony by Mr. Usiskin appears at pages 164–165 of the transcript:
"Q . . . .
Now yesterday you testified that the stairs and the stairwell were, in your opinion, substandard for several reasons; is that right?
A That's correct.
Q And is the basis for those opinions your understanding of the BOCA Codes and what it requires?
A No. The primary reason, it is just good building practice. Every code I have ever seen, and even books on the subject, stress most important in all safety requirements that the treads on the risers be of uniform height and that there be no protrusions in the treads, so that that is a primary reason why these stairs are hazardous.
Q Is one of the bases for your opinion the BOCA Codes? Do you understand by question?
A Yes—yes, one of them is."

3. The record discloses that the construction of Sharp Hall was completed in 1952, but the University's records do not indicate the precise time when construction was begun or the exact date on which it was completed.

to express his opinion which was based in part upon the standards expressed in the code.

## III

■ The third point raised by the appellant is that it was so prejudiced by some of the plaintiff's counsel's remarks that a new trial is required. Toward the conclusion of his final argument, plaintiff's attorney told the jury:

> "In conclusion, let me say this: If you want this type of a problem to be corrected so it will never happen again in the University or in any other boys' dormitory where boys or active children are there, you will find for the plaintiff; because if you do that, then the University and other people and institutions will be a little more careful about their stairways. If you find for the defendant, they may not be and somebody else may fall down the stairwell like this. Thank you."

(Transcript, pp. 377–78).

These remarks clearly are improper. The jury is not to be concerned with making policy. It is to apply the law to the facts as it finds them, and argument of this character can only distract the jury from its task.

The trial Judge carefully instructed the jury that they were not to consider any possible collateral consequences of the verdict they might return, and therefore they should disregard counsel's remarks. The question, however, is whether the prejudicial and harmful effect of counsel's remarks was cured by this instruction. The cases upon which appellant relies in his argument for a new trial are all quite different than this one; the effect of any such allegedly prejudicial remark varies according to "the atmosphere of the trial." Stephens v. Sulkin, 280 Pa. 211, 124 A. 476 (1924). We are satisfied that any error here was remedied by the lower Court's instruction. A new trial is not required on this ground.

## IV

■ Appellant's fourth argument is that the trial Court applied an erroneous measure of damages. This argument is not supported by the record. The trial Court's instructions complied with this State's law regarding the measure of damages in a wrongful death action. See Cann v. Mann Const. Co., Del.Super., 8 Terry 504, 93 A.2d 741 (1952).

The thrust of appellant's argument on this point seems to be that the evidence does not support the charge. It objects specifically to inclusion by plaintiff's expert witness of estimates regarding decedent's social security benefits, pension plan benefits, and insurance policies in his calculation of damages. As to the first two, it is not improper that they be considered in measuring the value of a decedent's estate. 22 Am.Jur.2d, Death § 157 (1965); 81 A.L.R.2d 949. As to the life insurance policies, while it is true that insurance proceeds *may* have passed directly to named beneficiaries rather than to his estate, plaintiff's expert economist who testified regarding damages was necessarily dealing in probabilities, and we cannot say that it was reversible error for the jury to have considered his estimate, which may have included the value of the decedent's future insurance policies.

We find no reversible error in the proceedings below. The decision is affirmed.