# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

PATRICIA A. MCLEOD      )
                                      )

**Plaintiff**                 )
                                      )

        **v.**              )
                                      )     **C.A. No. S12C-07-004 MJB**
                                        )

**PATRICK SWIER, M.D. and**   )
**PATRICK SWIER, M.D., P.A.**   )
                                      )

**Defendants.**            )

**Submitted:** January 12, 2016
**Decided:** January 27, 2016

*Upon Defendants' Motion for New Trial,* **DENIED.**

## OPINION

Roger D. Landon, Esq., and Philip T. Edwards, Esq., Murphy & Landon, 1011 Centre Road #210, Wilmington, Delaware 19805, *Attorneys for Plaintiff.*

Richard Galperin, Esq., and Joshua H. Meyeroff, Esq., Morris James LLP, 500 Delaware Avenue, Suite 1500, P.O. Box 2306, Wilmington, Delaware 19899, *Attorneys for Defendants.*

**BRADY, J.**

# I. INTRODUCTION

This is a medical negligence action in which Patricia A. McLeod ("Plaintiff") alleged that Dr. Patrick Swier ("Defendant") breached the standard of care owed to her by performing surgery on her left leg in 2010 without sufficient medical indication.[1]  Currently before the Court is Defendant's Motion for a New Trial.

A jury trial was held December 1, 2014 through December 10, 2014.[2]  On December 11, 2014, the jury returned a verdict in favor of Plaintiff in the amount of $3,425,515.00.[3]  On December 24, 2014, Defendant filed a Motion for a New Trial[4] and on January 7, 2015, Plaintiff filed a response.[5]  The file was referred to this Judge on April 27, 2015, and in May, oral argument was set with counsel for August 20, 2015. On August 20, 2015, this Court heard Oral Argument on Defendant's Motion for a New Trial[6] and on September 10, 2015, the Court received the transcript from Oral Argument.[7]  The Court realized that certain portions of the transcript of closing argument had not been prepared, and requested same in December, 2015. The transcript was received on January 12, 2016.[8]

For the reasons outlined below, Defendant's Motion for a New Trial is **DENIED**.

## II. PARITIES CONTENTIONS

### A. Defendant's Position

Generally, Defendant is seeking a new trial based on what he argues is improper and prejudicial conduct of Plaintiff's counsel in closing and rebuttal argument.  Defendant argues that Plaintiff never sought punitive damages or alleged that Defendant acted maliciously in the

---

[1] *See* Complaint, Doc. Item 1 (July 3, 2012).
[2] *See* Trial Worksheet, Item 85 (Dec. 11, 2014).
[3] *See* Trial Worksheet, Item 85 (Dec. 11, 2014).
[4] Def.'s Mot. For a New Trial, Item 88 (Dec. 24, 2014).
[5] Plaintiff's Opposition to Defendants' Motion for a New Trial, Item 91 (Jan. 7, 2015).
[6] *See* Judicial Action Form, Item 101 (Aug. 20, 2015).
[7] Transcript Filed, Item 102 (Sept. 10, 2015).
[8] Transcript of Trial Excerpt, Item 103 (Jan. 12, 2016).

pleadings.[9] Defendant contends Plaintiff's counsel prejudiced the jury through comments in his closing and rebuttal arguments, by focusing on the Defendant's conduct.[10] Defendant argues that "[o]nly" in punitive damages cases should a jury focus on the Defendant's conduct.[11] Plaintiff's comment "enough is enough", "has no purpose other than the issue of punishment."[12]

Defendant further argues that it was improper for Plaintiff to state:

[T]hat [Defendant] was an "opportunist" focused on his own financial gain; that Defendant was not a "good, caring doctor"; that he acted in an "outrageous" manner; that he was "nuts" and "insan[e]"; that he maligns people with Plaintiff's symptoms online to "sell this and misrepresent this condition"; that he "scared" Plaintiff into the surgery; that he relied on "false" information and a "lie"; and that he treated Plaintiff "like another cog in the machine."[13]

Defendant argues that the above errors were "compounded by additional comments made by counsel,"[14] including: (1) "'all doctors know' that conservative treatment is always appropriate before surgery . . . (2) statements about the credibility of Dr. Bird, who counsel noted was 'outrage[d]' and 'believes . . . to the depth of his soul' that [Defendant] harmed Plaintiff; (3) statements that Defendant (who had no burden of proof) failed to find an expert to address Plaintiff's CRPS, thereby undermining the legitimacy of their defense; and (4) statements that 'Mr. Galperin is skillful, *I'll give him that*' to suggest that Defendants' counsel manipulated testimony improperly."[15]

Defendant argues that Plaintiff's summation created a theme that there was insanity in the decision making and that there was a money-making factory-like business practice, and contends that if Plaintiff wanted to argue to the jury that Defendant had "an assembly line business" then

---

[9] Def.'s Mot. For a New Trial, Item 88, at *1-2 (Dec. 24, 2014).
[10] Def.'s Mot. For a New Trial, Item 88, at ¶ 4 (Dec. 24, 2014) (emphasis in motion).
[11] Def.'s Mot. For a New Trial, Item 88, at ¶ 4 (Dec. 24, 2014).
[12] Transcript of Oral Argument, Item 102, at *26 (Sept. 10, 2015).
[13] Def.'s Mot. For a New Trial, Item 88, at ¶ 3 (Dec. 24, 2014) (internal citations omitted).
[14] Def.'s Mot. For a New Trial, Item 88, at ¶ 6 (Dec. 24, 2014).
[15] Def.'s Mot. For a New Trial, Item 88, at ¶ 6 (Dec. 24, 2014) (emphasis in original). "CRPS" stands for complex regional pain syndrome.

he "should have alleged punitive damages, intentional conduct, and done discovery on [the] number of cases that [Defendant] does, how many of these does he do, and does he, in fact, have an assembly line. But that was never done."[16]

Defendant conceded he did not make objection to any of these comments, excepting the initial time Plaintiff's counsel made the comment "enough is enough", but argues that the prejudice from these comments was so conspicuous that the Court should have raised the concerns *sua sponte*.[17] He cites to cases holding that objections are not waived by failing to object if the argument was "inflammatory and prejudicial."[18]

## B. Plaintiff's Position

Plaintiff argues that Defendant's failure to raise any objection during closing argument or immediately thereafter constitutes a waiver of his objection and therefore this Court's standard of review is plan error.[19] Plaintiff notes that the "Court went to great lengths to ensure that the jury understood that this matter was to be decided on the evidence and the law" and that the Court instructed the jury that statements made during closing argument were not evidence.[20] Plaintiff argues that the jury's verdict could not be the result of bias and prejudice because the verdict was $1 million less than the amount Plaintiff boarded in special damages.[21]

Plaintiff's counsel argues that the evidence supported an inference that Defendant "manipulated" Plaintiff into having the surgery. Specifically, Plaintiff argues that "the testimony from my client as to how he manipulated her into deciding to have this surgery was pretty poignant. And he did it to her not once, but twice, where he wheeled up to her – this was her

---

[16] Transcript of Oral Argument, Item 102, at *28 (Sept. 10, 2015).
[17] Def.'s Mot. For a New Trial, Item 88, at ¶ 7 (Dec. 24, 2014)
[18] Def.'s Mot. For a New Trial, Item 88, at ¶ 7 (Dec. 24, 2014) (citing *Sears, Roebuck and Co. v. Midcap*, 893 A.2d 542, 552 (Del. 2006); *Fehrenbach v. O'Malley*, 841 N.E.2d 350, 358-70 (Ohio Ct. App. 2005)).
[19] Plaintiff's Opposition to Defendants' Motion for a New Trial, Item 91, at *3 (Jan. 7, 2015).
[20] Plaintiff's Opposition to Defendants' Motion for a New Trial, Item 91, at *5 (Jan. 7, 2015).
[21] Plaintiff's Opposition to Defendants' Motion for a New Trial, Item 91, at *5 (Jan. 7, 2015).

4

testimony – in his chair and said, look at this PSSD testing; you've got major, major nerve damage in your legs, and you need surgeries immediately or you're going to suffer serious consequences. That's what she said he said to her."[22]

Plaintiff further argues that the evidence supports the fact that Defendant made untrue statements in his medical records and relied on those statements in determining that surgery was warranted.[23] Specifically, Plaintiff notes that the Surgical Justification Form states that Plaintiff "failed conservative treatments" and lists all the conservative treatments Plaintiff underwent.[24] However, the medical records and the testimony from Defendant himself indicate that Plaintiff underwent no conservative treatment prior to surgery.[25]

Plaintiff argues that he did not disregard the Court's ruling on Defendant's objection when he stated for the second time that "enough was enough."[26] Specifically, Plaintiff argues, when he used that phrase the second time, that he was not asking the jury to be the voice of the community, as had been prohibited by the Court, but was asking the jury to decide that "enough was enough on these facts from this doctor . . . whether this doctor breached the standard of care, was negligent in a manner proximately causing injury to the Plaintiff."[27] Plaintiff further explained that when he said enough is enough, he was asking the jury to "give my client a liability verdict against this defendant on these facts for what he did to her."[28]

Plaintiff further contends that he did not make disparaging, personal characterizations of the Defendant. Specifically, Plaintiff argued that he did not call defendant insane but said that

---

[22] Transcript of Oral Argument, Item 102, at *25 (Sept. 10, 2015).
[23] Plaintiff's Opposition to Defendants' Motion for a New Trial, Item 91, at *6 (Jan. 7, 2015).
[24] Plaintiff's Opposition to Defendants' Motion for a New Trial, Item 91, at *7 (Jan. 7, 2015).
[25] Plaintiff's Opposition to Defendants' Motion for a New Trial, Item 91, at *7 (Jan. 7, 2015); *see also* Surgical Justification Form, Exhibit C to Plaintiff's Opposition to Defendants' Motion for a New Trial, Item 91 (Jan. 7, 2015).
[26] Transcript of Oral Argument, Item 102, at *12 (Sept. 10, 2015).
[27] Transcript of Oral Argument, Item 102, at *12-13 (Sept. 10, 2015).
[28] Transcript of Oral Argument, Item 102, at *23 (Sept. 10, 2015).

"the decision to try to do surgery on a leg with no symptoms in it, when his own experts says that's a breach of the standard of care, that would be insanity."[29]

### III. APPLICABLE LAW

This Court has previously "recognize[ed] that counsel are permitted a certain [degree] of flexibility in presenting zealous jury argument," however Delaware Courts have "placed limits on such advocacy."[30] The Delaware Supreme Court has ruled that it is improper for counsel to make a factual statement which is not supported by the evidence; to comment on the legitimacy of the client's claims or defense; to mention that the defendant is insured; to suggest to the jury that it place themselves in the plaintiff's position—the "gold rule" argument; to comment on a witness' credibility based on personal knowledge or evidence not in the record; to vouch for client's credibility; or to make an erroneous statement of law.[31] If a court finds that a comment was improper the court must determine the effect of counsel's improper comment.[32] In determining the effect of the comment this Court applies the test adopted by the Delaware Supreme Court in *Hughes v. State*: "(1) the closeness of the case, (2) the centrality of the issue affected by the error, and (3) the steps taken in mitigation."[33]

This Court has previously stated that "[w]hen reviewing a motion for a new trial, the jury's verdict is entitled to 'enormous deference.'"[34] Specifically, this Court has stated that it "will not upset the verdict 'unless "the evidence preponderates so heavily against the jury verdict

---

[29] Transcript of Oral Argument, Item 102, at *24 (Sept. 10, 2015).

[30] *Sears, Roebuck and Co. v. Midcap*, 893 A.2d 542, 551 (Del. 2006) (quoting *DeAngelis v. Harrison*, 628 A.2d 77, 80 (Del. 1993)).

[31] *DeAngelis*, 628 A.2d at 80 (citing *Henne v. Balick*, 146 A.2d 394, 398 (Del. 1958); *Robelen Piano Co. v. Di Fonzo*, 169 A.2d 240, 248-249 (Del. 1961); *Chavin v. Cope*, 243 A.2d 694, 696-97 (Del. 1968); *Delaware Olds v. Dixon*, 367 A.2d 178, 179 (Del. 1976); *Joseph v. Monroe*, 419 A.2d 927, 930 (Del. 1980); *Jardel Co., Inc. v. Hughes*, 523 A.2d 518, 532-33 (Del. 1987)).

[32] *DeAngelis*, 628 A.2d at 81 (citing *Hughes v. State*, 437 A.2d 559, 571 (Del. 1981)).

[33] *Id.*

[34] *Crist v. Connor*, 2007 WL 2473322, at *1 (Del. Super. Aug. 31, 2007) (quoting *Young v. Frase*, 702 A.2d 1234, 1236 (Del. 1997)).

6

that a reasonable jury could not have reached the result" or the Court is convinced that the jury disregarded applicable rules of law, or where the jury's verdict is tainted by legal error committed by the Court during the trial.'"[35]  The Delaware Supreme Court has noted that "[w]hen supported by the evidence, a jury verdict must be upheld."[36]

The Delaware Supreme Court has further stated that "Rule 46 of the Superior Court Civil Rules requires counsel to state his objection to anything taking place during the trial, and his failure to do so prevents him from urging the point on appeal."[37]  The Court has stated that "Counsel must preserve alleged errors committed by the Court, by timely and sufficient objections and requests, if he wishes to assert such matters as grounds for new trial.  Defendant cannot gamble on his chances for a favorable verdict and, if disappointed, then seek to use the alleged error as grounds to obtain another trial."[38]  In cases in which the party has failed to object, the court will review the claim to determine if plain error exists.[39]  Pursuant to the plain error standard, "the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process . . . Furthermore, the doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[40]

---

[35] *Id.* (quoting *Mitchell v. Haldar*, 2004 WL 1790121, at *3 (Del Super. Aug. 4, 2004) (quoting *Storey v. Camper*, 401 A.2d 458, 465 (Del. 1997)).

[36] *Mumford & Miller Concrete, Inc. v. Burns*, 1996 WL 376942, at *3 (Del. July 1, 1996) (citing Del. Const., art. IV § 11; *Gannett Co. v. Re*, 496 A.2d 553 (Del. 1985)).

[37] *Hamilton v. Wrang*, 221 A.2d 605, 606 (Del. 1966).

[38] *State v. Halko*, 193 A.2d 817, 830 (Del. Super. 1963) (internal citations omitted).

[39] Burroughs v. State, 988 A.2d 445, 449 (Del. 2010) (citing *Mason v. State,* 658 A.2d 994, 996 (Del.1995) (citing *Robertson v. State,*596 A.2d 1345, 1356 (Del.1991); *Ray v. State,* 587 A.2d 439 (Del.1991);*Weber v. State,* 547 A.2d 948, 960 (Del.1988); Supr. Ct. R. 8; *State v. Halko,* 56 Del. 480, 193 A.2d 817, 830 (1963))).

[40] *Mason*, 658 A.2d at 996 (citing *Robertson*, 596 A.2d at 1356 (quoting *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986))).

## IV. EVALUATION OF THE ALLEGATIONS

Defendant's arguments can be broken down into five different categories: (1) multiple claims regarding how the Plaintiff characterizes the Defendant and his business operation; (2) claims relating to comments regarding expert witnesses; (3) a claim that Plaintiff's counsel disregarded the Court's instruction; (4) a claim regarding Plaintiff's counsel's comments regarding opposing counsel; and (5) a claim that Plaintiff's counsel improperly referenced information not in the record. The Court will address each, *seriatim*.

### i. Claims that Plaintiff's counsel made improper comments regarding the Defendant and his business operation.

Defendant contends that Plaintiff's counsel argued that Defendant "acted in an 'outrageous manner'" and that "he was 'nuts' and 'insan[e]'" and that this argument prejudiced the jury.[41] To so claim, takes these statements out of context and misrepresents them in order to make them appear prejudicial. Specifically, Plaintiff's counsel stated in closing argument, "[t]hat is outrageous. It is unbelievably outrageous that this doctor wanted to do surgery on this right leg given what was going on at that time."[42] Plaintiff then explained what other doctors thought of Defendant's decision to operate on the right leg: "[Plaintiff] was telling the doctors that were treating her not only – this guy wants to do surgery on my right leg and they're like, that's nuts. This is insanity on the part of this doctor at that time wanted to do surgery on the right leg."[43]

As is clear from Plaintiff's counsel's statement, he was not saying that Defendant was nuts or insane, as Defendant argues. Instead, Plaintiff was arguing that Defendant's decision to do surgery on the right leg was outrageous, nuts, or insane. In addition, Plaintiff's counsel's

---

[41] Def.'s Mot. For a New Trial, Item 88, at ¶ 3 (Dec. 24, 2014).
[42] Transcript of Closing Argument, Item 86, at *17 (Dec. 10, 2014).
[43] Transcript of Closing Argument, Item 86, at *18 (Dec. 10, 2014).

statements were reasonable inferences the jury could have drawn from the expert medical testimony, which indicated that there was no reason for the surgery to be conducted on Plaintiff's right leg. The Court finds that these statements as made, were not improper, and that Defendant's characterization exceeds the actual statements made.

Defendant argues that it was improper for Plaintiff's counsel to argue that Defendant "'scared' Plaintiff into the surgery."[44] Specifically, Plaintiff counsel stated, "[i]f conservative treatment doesn't work, then if your last resort truly is surgery, then you inform the patient that that's what they can have done and they have to make a decision as to whether to do it or not. You don't scare them into it. You give them the facts and you let them make a decision."[45]

At trial, Plaintiff's medical expert testified that Plaintiff did not need to have surgery on her right leg and that conservative treatment should have been done before surgery. In addition, Plaintiff testified that she decided to have the surgery after Defendant pulled his chair up to her, showed her medical records and informed her that if she did not have surgery immediately that she would suffer major nerve damage in her legs. The Defendant, himself, testified that the medical records completed in his office were not accurate. Those records specifically indicated the conservative treatments that had been attempted and failed. The Defendant acknowledged at trial that no conservative treatment had been applied before surgery was performed. Based on the evidence, Plaintiff's argument, that Defendant "scared" Plaintiff into surgery by misrepresenting her condition, was a reasonable inference the jury could have drawn. The Court finds that Defendant's argument lacks merit.

---

[44] Def.'s Mot. For a New Trial, Item 88, at ¶ 3 (Dec. 24, 2014).
[45] Transcript of Closing Argument, Item 86, at *23 (Dec. 10, 2014).

9

Defendant further argues that it was improper for Plaintiff's counsel to argue that Defendant relied on "false" information and a "lie."[46] During closing argument, Plaintiff's counsel argued that Defendant relied on unsupported statements in his medical forms: "[w]ere her more or less dangerous treatment options exhausted? No, they were not. If you disagree with the whole rest of our case, we still win the case because the conservative options were not exhausted. He said they were by virtue of his form but that was a lie. They were not exhausted."[47] The Surgical Justification Form was evidence at trial. This form stated that Plaintiff "failed conservative treatments" and listed all the conservative treatments Plaintiff underwent.[48] However, the evidence at trial, specifically the medical records and the testimony from Defendant himself, indicate that Plaintiff underwent no conservative treatment prior to surgery.[49] As a result, Plaintiff clearly was supported by the evidence to argue that a reasonable inference for the jury to draw was that Defendant relied on misinformation when determining that surgery was warranted, or that Defendant misrepresented the justification for surgery in order to support performing the surgery.

Plaintiff's counsel further argued that the Defendant had financial incentives to perform the surgery. He stated:

> Should [Plaintiff] expect to be treated as an individual rather than as a product on the assembly line? Should she expect that her doctor will be honest? Should she expect that her doctor will be fair?
>
> Should she expect that her doctor will use his substantial knowledge for good? Should she expect that her doctor will put her health above any financial incentive for himself?
>
> You can look at this case on two ends of the spectrum.

---

[46] Def.'s Mot. For a New Trial, Item 88, at ¶ 3 (Dec. 24, 2014).
[47] Transcript of Closing Argument, Item 86, at *30 (Dec. 10, 2014).
[48] Surgical Justification Form, Exhibit C to Plaintiff's Opposition to Defendants' Motion for a New Trial, Item 91 (Jan. 7, 2015).
[49] Plaintiff's Opposition to Defendants' Motion for a New Trial, Item 91, at *7 (Jan. 7, 2015).

Is this case a case where an honest and caring doctor was truly using his best judgment and determined that the most radical treatment option was truly necessary and worth all the risks to treat [Defendant's] complaints, or through the evidence that you've heard, is this a case where the doctor was an opportunist, caring more about his own bottom line than his patient, seeing a perfect opportunity to convince [Defendant] that her condition was actually far more dire than it actually was so that he can process her through his surgery assembly line?[50]

Plaintiff's counsel cited to the Defendant's decision to do surgery on the right leg "[That] is a huge fact in this case because that in and of itself goes a long way toward proving that this doctor is an opportunist, not a good, caring doctor who puts his patients above his own financial gain."[51]  Plaintiff then ended his closing argument by stating, "[i]t's unimaginable to think about [Defendant's] daily existence and to think about what she goes through day after day after day all because of this doctor who was dead set on doing the surgery no matter what and treated her like another cog in the machine.  He wanted another person in his surgery assembly line."[52]  Defendant argues that these statements were improper and allegedly prejudiced the jury.[53]

The Court finds that Plaintiff's statements were reasonably intended to try to explain what might have motivated a doctor to perform surgery on a patient who had no symptoms or complaints, whose medical records, which proffered a basis to justify surgery, were false, and who acknowledged that at trial.  Further, Plaintiff presented adamant expert medical testimony that no surgery should have been done on the right leg.  Based on this evidence, the jury could have reasonably inferred, as Plaintiff argued, that Defendant had a monetary motivation for doing the surgery.

---

[50] Transcript of Closing Argument, Item 86, at *11-12 (Dec. 10, 2014).
[51] Transcript of Closing Argument, Item 86, at *13 (Dec. 10, 2014).
[52] Transcript of Closing Argument, Item 86, at *36-37 (Dec. 10, 2014).
[53] Def.'s Mot. For a New Trial, Item 88, at ¶ 3 (Dec. 24, 2014).

11

### ii.    Claims regarding expert witness testimony

Defendant argues that it was improper for Plaintiff's counsel to state that all doctors know that conservative treatment is appropriate before surgery.[54]  Plaintiff's counsel's statement as a whole reads:

> Dr. Swier, for whatever reason, decided to skip the conservative treatment process and go straight to surgery but he knows that conservative treatment first is the standard of care.  How do we know that he knows that?  Because all doctors know that, number one, and number two, it's even in his operative justification form.  That's in his form that conservative treatment was tried and failed.  That's how he justifies the surgery, in part, 'Conservative treatment has been tried and failed.'  And we know from looking at that form and discussing it with him and others that that operative justification form is a complete sham in this case.[55]

When read as a whole, Plaintiff was in fact arguing the obvious, as well as that Dr. Swier knew that he should have attempted conservative treatment before deciding to do surgery.  This argument is supported by the evidence, specifically, Defendant's own form. The Court finds no merit in Defendant's argument.

It is improper for counsel to comment on the credibility of witnesses from personal knowledge or from evidence not on the record.[56]  Improperly vouching for the credibility of a witness is not *per se* grounds for a new trial.[57]  Rather, the question is "whether the improper comments caused sufficient prejudice to the complaining party to warrant reversal or whether the prejudice was cured by the cautionary instructions given by the Trial Court."[58]

Defendant argues that it was improper for Plaintiff's counsel to make "statements about the credibility of Dr. Bird, who counsel noted was 'outrage[d]' and 'believes . . . to the depth of

---

[54] Def.'s Mot. For a New Trial, Item 88, at ¶ 6 (Dec. 24, 2014).

[55] Transcript of Closing Arguments, Item 86, at *24 (Jan. 12, 2016).

[56] *Doochack v. Hobbs*, 1994 WL 237597, at *5 (Del. 1994) (citing *Joseph v. Monroe*, 419 A.2d 927, 930 (Del. Super. 1980)).

[57] *Joseph v. Monroe*, 419 A.2d 927, 930 (Del. 1980) ("While we agree, of course, that it is improper for counsel to comment on the credibility of witnesses from personal knowledge or from evidence not on the record, every such comment is not necessarily reversible error.").

[58] *Id.* (citing *University of Delaware v. Munson*, 316 A.2d 206 (Del. 1974).

his soul' that Dr. Swier harmed Plaintiff."[59]   Here, there was no objection and no cautionary instruction.  Plaintiff's counsel's actual comments regarding Dr. Bird were:

> Dr. Bird, from Salisbury, was there any witness in this case who was more adamant than Dr. Bird about the fact that this Dr. Swier breached the standard of care by doing the surgery?  I don't know if you were able to discern or detect the level of conviction and outrage that Dr. Bird feels about what Dr. Swier did to this patient, their joint patient, and it's a rare -- it's a rarity when a doctor from the same community will come in and criticize another doctor and Dr. Bird was willing to do that and he did it.  He believes that to the depth of his soul.[60]

Plaintiff's counsel was not vouching for the credibility of Dr. Bird as Defendant argues. He was, in fact, commenting on the witness's manner and demeanor on the stand, during what was, to the trial court's own observation, adamant testimony.  The Court finds no merit to this argument.

It is improper for counsel to comment on the legitimacy of a client's claim or defense.  In *Robelen Piano Co. v. Di Fonzo*, Plaintiff's counsel in summation stated that if the plaintiffs had no claim, they would not be before the jury.[61]  The Delaware Supreme Court found the comment improper because "it insinuates that the court, in permitting the claim to go before the jury, had ruled that it was a valid claim."[62]  Similarly, in *DeAngelis*, relied upon by Defendant, the party injected comment suggesting a court's apparent sentiment regarding the validity of a case.[63] That is not the case here.

Finally, Defendant argues that it was improper for Plaintiff's counsel to make "statements that Defendants (who had no burden of proof) failed to find an expert to address Plaintiff's CRPS, thereby undermining the legitimacy of their defense."[64]  Plaintiff's counsel stated:

> And don't you think if there was an expert out there such as Dr. Ducic that they could bring in that [sic] could have looked at this record and said, hey, this CRPS

---

[59] Def.'s Mot. For a New Trial, Item 88, at ¶ 6 (Dec. 24, 2014) (citing *DeAngelis*, 628 A.2d at 80).
[60] Transcript of Closing Argument, Item 86, at *29 (Dec. 17, 2014).
[61] *Robelen Piano Co.*, 169 A.2d at 248.
[62] *Id.*
[63] *DeAngles*, 628 A.2d at 80.
[64] Def.'s Mot. For a New Trial, Item 88, at ¶ 6 (Dec. 24, 2014) (citing *DeAngelis*, 628 A.2d at 80).

wasn't caused by this surgery, it came about because of this or that or the other thing, that would have been done? That's what you would have heard. These are super high stakes in this case and they would have brought someone in if they had someone, anyone in the whole world, that could have looked at this and said there was something other than the surgery that caused this CRPS.[65]

In the context of a criminal case, the Delaware Supreme Court has stated that "the inferences drawn from prosecutorial comment on the absence of an *available* fact witness do not shift the burden of proof, but merely contrast the weight of the State's evidence adduced by the defendant."[66] In fact, Defendant presented no causation expert related to the CRPS. There is no evidence there was no expert available to the Defendant and no such claim is made now. Simply stating that the Defendant has failed to obtain an expert witness does not shift the burden of proof. Counsel is permitted in closing arguments to zealously represent their client. Such representation may call for counsel to argue the strengths of their case and the weaknesses of the opposing party's case. Such arguments are not improper. The Court finds no merit in Defendant's argument.

### iii.     Claim that Plaintiff's Counsel Disregarded The Court's Instruction

During closing argument, Plaintiff stated "[s]o it's going to be up to you as the conscience of this community to decide how badly a doctor can violate the patient's safety rules and safe medical practices *before the community's going to stand up and say enough is enough*."[67] The Defendant then objected to this statement stating "it's inappropriate to tell the jury that they're sending a message to anybody and it's exactly what Mr. Landon is doing."[68] This Court sustained the objection and instructed the jury:

> Ladies and gentlemen of the jury, your job in this case is to render a verdict that is fair and impartial to both parties on the evidence presented and the law as I

---

[65] Transcript of Closing Argument, Item 86, at *31 (Dec. 17, 2014).
[66] *Benson v. State*, 636 A.2d 907, 910 (Del. 1994). (emphasis in original).
[67] Transcript of Closing Argument, Item 86, at *8 (Dec. 10, 2014) (emphasis added).
[68] Transcript of Closing Argument, Item 86, at *8 (Dec. 10, 2014).

14

instruct you. It is not to be a voice of the community but, rather, to decide this case, regardless of any consequences, on the facts and the law.[69]

Plaintiff subsequently stated, "through the evidence that you've heard, is this a case where the doctor was an opportunist, caring more about his own bottom line than his patient, seeing a perfect opportunity to convince Plaintiff that her condition was actually far more dire than it actually was so that he can process her through his surgery assembly line? . . . [I]s [Defendant] the opportunist? In which case we win and the case will be long remembered because you will have decided that *on these facts* enough is enough from this doctor."[70] Defendant argues that Plaintiff's counsel "disregarded the Court's instruction and proceeded to reargue [that the jury should be the voice of the community] with the exact words that 'enough is enough.'"[71]

In *Nishihama v. City and County of San Francisco*, plaintiff's counsel, over objection, argued that the jury should send a message to the defendant by "delivering a substantial verdict."[72] Plaintiff's counsel further stated that "by 'your verdict you do decide how our City should be run,' and 'how the City should do its job, how we as citizens deserve to be treated.'"[73]

The California Court of Appeals in *Nishihama*, held that "[a]ny suggestion that the jury should 'send a message' by inflating its award of damages, however, would be improper where, as here, punitive damages may not be awarded."[74] The court further noted that "suggesting that the city chose to risk harm to its citizens rather than to cause its employees to do their jobs, tended to deflect the jury from their task, which was to render a verdict based solely on the

---

[69] Transcript of Closing Argument, Item 86, at *10 (Dec. 10, 2014).
[70] Transcript of Closing Argument, Item 86, at *12 (Dec. 10, 2014) (emphasis added).
[71] Def.'s Mot. For a New Trial, Item 88, at ¶ 3 (Dec. 24, 2014) (emphasis added).
[72] *Nishihama v. City and County of San Francisco*, 93 Cal.App.4th 298, 304 (2001).
[73] *Id.*
[74] *Id.* at 305.

evidence admitted at trial."[75] The court, however denied defendant's motion for a new trial and affirmed the trial court's determination, finding that counsel's comments were "less [of] a plea for punitive damages than a plea for a verdict of liability."[76]

In this case, Plaintiff's counsel did, in fact, use the same words "enough is enough" in his comments subsequent to the Court's ruling. However, he did not suggest again that the jury should send that message to the community. When the statement is put into context, is it clear that Plaintiff was arguing for a verdict of liability on the facts of this case which, he contended, the evidence supported. There was no objection, and the standard of review is plain error. The Court finds no plain error in the comment. Plaintiff's theory was that Defendant had twice manipulated Plaintiff into having surgery, at least one of which was entirely unnecessary and not medically indicated. To use the phrase "enough is enough" could fairly be argued to relate to the circumstances.

### *iv.*     *Claim that Plaintiff improperly commented regarding Defendant's counsel*

Defendant argues that it was improper for Plaintiff's counsel to make "statements that 'Mr. Galperin is skillful, *I'll give him that*' to suggest that Defendants' counsel manipulated testimony improperly."[77] Plaintiff's counsel's comment was:

> In terms of whether or not, on cross-examination, after suffering from this condition for the past, I guess it's been a little over four years now, with her sparring with Mr. Galperin about, well, I don't think that was true, I don't think I had those problems, I don't think I had that complaint, skillful lawyer, Mr. Galperin is skillful, I'll give him that, he's a very good lawyer, he did a very nice job of going through that information.

> Bur remember what you heard from the doctors about CRPS and there was a term called dysexecutive function. Remember that word? Dysexexutive function. One of the reasons why she has difficulty in terms of future employability is

---

[75] *Id.* (internal citations omitted).

[76] *Id.*

[77] Def.'s Mot. For a New Trial, Item 88, at ¶ 6 (Dec. 24, 2014) (emphasis in original) (citing *DeAngelis*, 628 A.2d at 80).

because her brain isn't working right anymore because of this problem. And is it any wonder after being in unrelenting pain every minute of her life for four years that her brain and her memory aren't functioning as well as they might or as well as they would if she didn't have this syndrome?

So can't we cut her just a little bit of a break in terms of nitpicking through the record and asking her if she remembers this or that complaint from 1993 or 2000 or 1998?[78]

This Court has previously held that an attack on opposing counsel at trial that is calculated to prejudice the attorney, and by association, the attorney's client, or that attacks the integrity of opposing counsel is a violation of the Rules of Professional Conduct.[79] In *Putney v. Rosin*, defendant's counsel in both opening and closing arguments "forcefully presented" that plaintiff and his client had manufactured a claim after the fact.[80] The court held that the comments prejudicially affected the plaintiff's right to a fair trial.[81]

Plaintiff's counsel's statements here do neither. They do reflect that he acknowledges that Defendant's counsel effectively cross-examined Plaintiff regarding inconsistencies between her statements prior to and during trial, and gave credit to Defendant's counsel for doing so. When counsel's statements are viewed in context, it is clear that Plaintiff's counsel was not attempting to enhance his case by suggesting that Defense counsel had manipulated the testimony, but rather was attempting to explain to the jury that the inconsistencies resulted from Plaintiff's medical problems. The Court therefore finds no error in this comment.

> **v.      Claim that it was improper for Plaintiff's counsel to argue evidence not in the record.**

Defendant argues that it was improper for Plaintiff's counsel to reference information not in the record in his closing statement. Specifically, Plaintiff's counsel said:

---

[78] Transcript of Closing Argument, Item 86, at *41 (Dec. 17, 2014).
[79] *Putney v. Rosin*, 791 A.2d 902, 906 (Del. Super. 2001).
[80] *Id.*
[81] *Id.*

All you have to do is look at his website to see how he portrays people who have peripheral neuropathy and the dangers that's involved, in particular, people like diabetics with risking losing toes and feet, maybe an amputation might be necessary. So you can imagine how he can sell this and misrepresent this condition to this woman to convince her that this is something that has to be done.[82]

Defendant contends these statements reflect that Plaintiff's counsel argued that Defendant "maligns people with Plaintiff's symptoms" [83] No depiction of, nor reference to, Defendant's website was presented during evidence at trial. Any comments as to the contents of Defendant's website were not supported by the evidence and were, therefore, improper.

## V. ANALYSIS

Apart from the alleged misconduct, there are other factors that should be considered by the Court in determining whether plain error exists or a new trial should be granted: (1) whether Defendant diminished the alleged prejudicial effect of any, or all, of these comments through his closing argument; (2) whether the Court diminished the alleged prejudicial effect of these comments through its jury instructions; and (3) whether the jury's verdict clearly shows a manifest injustice.[84]

Defendant's counsel, throughout his closing argument, effectively addressed Plaintiff's counsel's statements and used them to argue in support of his client. Defense counsel clearly thought Plaintiff's counsel's arguments were excessive and extreme, and therefore, not credible. Specifically, Defendant's counsel stated "[w]hy did Mr. Landon stand before you this morning -- this afternoon and speak so vehemently, so angrily, so strongly, about my client's character? Because he doesn't have the facts, he doesn't have the expert witnesses, to support a claim of

---

[82] Transcript of Closing Argument, Item 86, at *21 (Dec. 10, 2014).
[83] Def.'s Mot. For a New Trial, Item 88, at ¶ 3 (Dec. 24, 2014).
[84] *Hughes*, 437 A.2d at 571.

medical negligence. So instead he goes on to a plan of alarm, of fear and attack."[85] Defendant

further discounted the statements made by Plaintiff's counsel by stating, "[w]hat are the facts

based upon medical records, not argument, not innuendo, not implication, but on the medical

records? . . . Evidence this is what juries use to decide verdicts, evidence, not arguments, not

character assassination, but evidence."[86]

Defendant's counsel also rebutted Plaintiff's argument that Defendant's decision was

based on greed and not medical expertise:

> It's clear what Mr. Landon wants you to believe, and he said it, that this is greed.
> This really isn't a case of negligence. This si a case of intentional acts that this
> doctor, out of greed, intentionally did something that didn't need to be done.
> What have you seen in the records and in his testimony that evidences greed?

> Ladies and gentlemen, if this was all about greed, would he be doing
> neurosurgery at all? He tells you that he charges $7,000 for this. He got paid
> $1,000. If he was greedy, what would he be doing? He'd be doing cosmetic
> plastic surgery; facelifts, breast augmentation surgeries, tummy tucks, eyes.
> Why? Why would he do these? If he's greedy, he gets paid every nickel he
> charges. He doesn't have to do battles with insurance companies over getting
> paid for tests for the PSSD which he's accused of doing. You heard what a battle
> they gave him, they give.

> Why would he order blood test and another EMG if this is a matter of just, I'm
> cutting -- greed -- I'm cutting? He doesn't get paid for those EMG's that He
> orders or for the blood tests. They go to the labs or the EMG people.[87]

Defendant attacked Plaintiff's argument that Defendant relied on misinformation in

making his decision to do the surgery. Specifically, Defendant stated:

> If this man is the evil monster that is running an assembly line, why doesn't he
> have this form a little more carefully manipulated so that when he submits it, it
> makes complete sense, right or wrong? This document doesn't even make any
> sense. Why? Because it's a form and it isn't filled out completely properly. But
> is it evidence of an attempt to manipulate in order to keep the assembly line

---

[85] Transcript of Closing Arguments, Item 103, at *44 (Jan. 12, 2016).
[86] Transcript of Closing Arguments, Item 103, at *44-45 (Jan. 12, 2016).
[87] Transcript of Closing Arguments, Item 103, at *51-52 (Jan. 12, 2016).

going?  Is the form an issue of standard of care?  Has any expert said if you don't fill the form out right, you've breached the standard of care?[88]

And, Defendant's counsel suggested that the "angry" argument by Plaintiff's counsel was not based in law, but on emotion. Specifically, Defendant stated, "what you need to consider in a medical negligence case are the facts in evidence and the law, as it will be instructed to you in a calm and deliberate manner, not inflamed by words such as assembly lines and shams and manipulation and scare tactics."[89]

Further, the jury instructions were thorough and clear.  They jury was instructed with regard to its role as fact finder,[90] the weight to be given to statements made by counsel,[91] and with regard to allowing prejudice, sympathy, and any other motive to enter into their consideration.[92]  The Court gave an additional, cautionary instruction, upon objection, that what the attorneys say is not evidence and further reinforcing that the jury was to decide the case on the evidence and the law.[93]

---

[88] Transcript of Closing Arguments, Item 103, at *53 (Jan. 12, 2016).

[89] Transcript of Closing Arguments, Item 103, at *40 (Jan. 12, 2016).

[90] Jury Instructions, Item 84, at *1-2 (Dec. 10, 2014) ("Now that you have heard the evidence and the arguments of counsel, it is my duty to instruct you about the law governing this case.  Although you as jurors are the sole judges of the facts, you must follow the law stated in my instructions and apply the law to the facts as you find them from the evidence. . . . You have been chosen and sworn as jurors in this case to decide issues of fact.  You must perform these duties without bias for or against any of the parties.").

[91] Jury Instructions, Item 84, at *4 (Dec. 10, 2014) ("What the attorneys say is not evidence.  Instead, whatever they say is intended to help you review the evidence presented.  If you remember the evidence differently from the attorneys, you should rely on your own recollection. . . . It is not proper, however, for an attorney to state an opinion as to the truth or falsity of any testimony or evidence.  What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion or belief offered by an attorney concerning testimony or evidence.").

[92] Jury Instructions, Item 84, at *2, 21 (Dec. 10, 2014) ("You must perform these duties without bias for or against any of the parties.  The law does not allow you to be influenced by sympathy, prejudice, or public opinion. . . . Your verdict must be based solely on the evidence in the case.  You must not be governed by prejudice, sympathy, or any other motive except a fair and impartial consideration of the evidence.  You must not, under any circumstances, allow any sympathy that you might have for any of the parties to influence you in any way in arriving at your verdict.  I am telling you not to sympathize with the parties.  It is only natural and human to sympathize with persons involved in litigation.  But you must not allow that sympathy to enter into your consideration of the case or to influence your verdict.").

[93] Transcript of Closing Argument, Item 86, at *10 (Dec. 10, 2014).

Finally, the jury award was substantially less than the amount Plaintiff had requested in special damages, indicating that the jury's will was not overborne by Plaintiff's allegedly improper comments. Further, the jury's verdict was not against the great weight of the evidence. Plaintiff presented witnesses, including medical expert testimony and record documentation, which could reasonably be found to prove, by a preponderance of the evidence, that Defendant breached the standard of care and was negligent in a manner which proximately caused Plaintiff's injuries.

## IV. CONCLUSION

It is clear to the Court that Defendant's counsel made a tactical decision to refrain from further objection during closing argument and to use the Plaintiff's counsel's statements to portray Plaintiff's claims as an exaggerated plea based on emotion. Defendant's counsel used the statements about which he now complains to suggest there was a lack of merit or evidence to support Plaintiff's claims. Predominately the statements were fair inference from the testimony and evidence. To the extent, if any that they were not, they certainly do not rise to a level to deprive the Defendant of a fair trial or substantially prejudice the jury. The Court finds that the jury was not overborne by any allegedly prejudicial statement, that the jury instructions were sufficient to cure any defects, and that the jury's verdict was not against the great weight of the evidence. For these reasons, Defendant's Motion for a New Trial is **DENIED**.

**IT IS SO ORDERED.**

_____/s/_____
**M. JANE BRADY**
Superior Court Judge

21